CASE NO. 08-8016

IN THE UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL DAVID BELDERRAIN, | ) |
| | ) |
| Defendant-Appellant. | ) |

On Appeal from the United States District Court
for the District of Wyoming
The Honorable William F. Downes
D.C. No. 2:07-cr-00066-WFD

**APPELLANT'S OPENING BRIEF**

RAYMOND P. MOORE
Federal Public Defender

VICKI MANDELL-KING
Assistant Federal Public Defender
Chief, Appellate Division
633  -17th Street, Suite 1000
Denver, Colorado  80202
(303) 294-7002

Oral argument is requested.

SCANNED PDF FORMAT ATTACHMENTS ARE INCLUDED
WITH DIGITAL SUBMISSION SENT VIA EMAIL

June 13, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

PRIOR AND RELATED APPEALS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE AND FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.  Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Information Known Prior to State Plea . . . . . . . . . . . . . . . . . . . . . . . 2

    C.  Plea Negotiations in the State Case for
       Immunity from Federal Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

    D.  The Federal Charges . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    E.  Motion to Dismiss Based on State Plea Agreement . . . . . . . . . . . . . . 7

    F.  District Court's Ruling . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

BECAUSE THE AGREEMENT ENTERED INTO BY THE UNITED STATES
ATTORNEY'S OFFICE FOR THE DISTRICT OF MONTANA, IN
CONNECTION WITH MR. BELDERRAIN'S STATE PLEAS, BOUND THE
OFFICE FOR THE DISTRICT OF WYOMING, THE UNITED STATES
BREACHED THE AGREEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    A.  Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.  Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

C.  Reach of the Immunity Agreement:
     Authority to Bind Another District . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

     1. *Same or Related Crimes* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

     2. *Plea Agreement's Language Is Ambiguous* . . . . . . . . . . . . . . . . 18

          a. *Offices Act on Behalf of the United States* . . . . . . . . . . . . . 19

          b. *No Express Disavowal* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

          c. *Inference from Negotiations* . . . . . . . . . . . . . . . . . . . . . . . . 20

          d. *The Ambiguity Should Be Interpreted
             In Mr. Belderrain's Favor* . . . . . . . . . . . . . . . . . . . . . . . . . 21

     3. *Breach of Plea Analysis Leads to the Same Conclusion* . . . . . . . 22

     4. *Conclusion as to the Binding Nature of the Agreement* . . . . . . . . 24

D.  All the Information Was There: The State and Federal
     Authorities Should Have Known . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     1. *No New Information* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

     2. *Knew or Should Have Known* . . . . . . . . . . . . . . . . . . . . . . . . . . 25

     3. *Policy Reasons* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

     4. *Conclusion as to Current or New Information* . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT . . . . . . . . . . . . . . . 28

     Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF DIGITAL SUBMISSION . . . . . . . . . . . . . . . . . . . . . . . . . 30

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

ATTACHMENTS:
     United States v. Belderrain, Case No. 2:07-cr-00066-WFD,
          Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     United States v. Belderrain, Case No. 2:07-cr-00066-WFD,
          Motion to Dismiss All Counts and Exhibits . . . . . . . . . . . . . . . . . . . 2

     United States v. Belderrain, Case No. 2:07-cr-00066-WFD,
          Order Denying Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# TABLE OF AUTHORITIES

## CASES

Banks v. Reynolds,
      54 F.3d 1508, 1517 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Santobello v. New York,
      404 U.S. 257, 262 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

United States v. Alessi,
      544 F.2d 1139, 1153-54 (2nd Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Annabi,
      771 F.2d 670, 672 (2nd Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Borders,
      992 F.2d 563, 566-67 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Carter,
      454 F.2d 426, 428 (4th Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . 13, 17, 19

United States v. Chee,
      514 F.3d 1106, 1116 (10th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Crobarger,
      158 F. App'x 100 (10th Cir. 2005) . . . . . . . . . . . . . . . . . . . . 11-13, 16, 21, 22

United States v. Erekson,
      70 F.3d 1153, 1156 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Flowers,
      464 F.3d 1127, 1132 (10th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Gebbie,
      294 F.3d 540, 550 (3rd Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . 17, 19, 22

United States v. Guzman,
   318 F.3d 1191, 1194 (10th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Harvey,
   791 F.2d 294, 302-03 (4th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . 19, 20, 22

United States v. Johnston,
   199 F.3d 1015 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . 13, 15, 19, 20, 22

United States v. Jones,
   44 F.3d 860, 868 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Martinez,
   512 F.3d 1268, 1276 (10th Cir. 2008),
   cert. denied, ___ S.Ct. ___, 2008 WL 1781024 (2009) . . . . . . . . . . . . . . 16

United States v. Padilla,
   589 F.2d 481, 484 (10th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Peterson,
   225 F.3d 1167 (10th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 22, 23

United States v. Rowland,
   145 F.3d 1194, 1216 (10th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Russo,
   801 F.2d 624, 626 (2nd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 21

United States v. Sells,
   477 F.3d 1226, 1234 (10th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

United States v. Willis,
   476 F.3d 1121, 1128 (10th Cir.),
   cert. denied, 127 S.Ct. 3025 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## STATUTES

16 U.S.C. §§ 3372(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 3271 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. § 922(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

## OTHER

16 U.S.C. § 3372(a)(3)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

36 C.F.R. § 2.2(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Federal Rules of Appellate Procedure, Rule 4(b) . . . . . . . . . . . . . . . . . . . . . . . . . . 1

§ 87-3-102(3)(a) (MCA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

§ 87-3-104 (MCA) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## PRIOR OR RELATED APPEALS

_____None.

The Office of the Federal Public Defender, by undersigned counsel, on behalf of Michael David Belderrain, defendant-appellant, for his opening brief states:

## STATEMENT OF JURISDICTION

The United States District Court for the District of Wyoming had jurisdiction over this criminal case pursuant to 18 U.S.C. § 3271.  The judgment and commitment order was entered on the docket on February 29, 2008.  (v. 1, doc. 50).  (*Attachment 1*).  Mr. Belderrain filed a timely notice of appeal on March 3, 2008, pursuant to Rule 4(b), F.R.A.P. (v. 1, doc. 51).  This Court's appellate jurisdiction arises pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Because the agreement entered into by the United States Attorney's Office for the District of Montana, in connection with his state plea, bound the Office for the District of Wyoming from bringing charges based on the same or related conduct, the United States breached its agreement with Mr. Belderrain.

1

## STATEMENT OF THE CASE AND FACTS

### A.  Introduction

This appeal involves state and federal charges based upon Mr. Belderrain's actions, in and near Yellowstone National Park, of shooting a trophy bull elk and possessing its seven-point antlers.  To decide the issue presented, this Court is asked to consider the information known to state and federal authorities prior to Mr. Belderrain's plea in state court; the terms of the plea agreement which included a letter conveying immunity from federal prosecution; and information obtained after entry of his plea which, while "additional," should not fairly be characterized as "new or future" information.

### B.  Information Known Prior to State Plea

In late 2005, Chad Murphy, regional investigator for the Montana Department of Fish, Wildlife and Parks, began investigating Mr. Belderrain's outfitting business.  In particular, he was investigating the unlawful killing of a deer by one of Mr. Belderrain's clients, which took place in Montana outside the boundary of Yellowstone National Park.  (v. 5 at 11-12).[1]

---

[1]    Volume 5 is the transcript of the hearing that the district court conducted concerning Mr. Belderrain's motion to dismiss.

2

In January 2006, Officer Murphy spoke with Bonnie Gafny, a Ranger in Yellowstone, and as a result, became aware that an elk carcass, missing its head, had been found outside the park.[2]  (Id. at 59-60).  The carcass had been found in mid-December 2005.  (Id. at 78-79).  Based on footprints, blood and drag marks, it was determined that between one and three people had left the park, crossed the frozen river to the elk carcass and come back, dragging the elk head into the park.  (Id. at 80).

After this conversation, on February 15, 2006, Officer Murphy seized a seven-point elk head from Kenneth Senst at Custom Taxidermy.  (The officer identified the head depicted in a photograph, exhibit 2, admitted at the hearing.)[3]  At first, Mr. Senst said he had shot the elk, but later said that Mr. Belderrain had done so.  (Id. at 10-11).

Officer Murphy then interviewed Mr. Belderrain, who said he had killed an elk on November 24, 2005 in the Buffalo Horn Drainage, an area outside of Yellowstone.  (Id. at 18, 34).  Mr. Belderrain told the officer that it was on

---

[2]    Highway 191 is the major road through Montana and into Yellowstone.  (v. 5 at 77).  The area south of the park boundary is in the County of Gallatin, State of Montana.  (Id. at 78).

[3]    The bottom of exhibit 2 contains a picture of the mounted elk head.  At the top of the exhibit is a picture of the elk while alive, which was taken in the same vicinity where it was later killed.  (v. 5 at 56).  Officer Murphy received the latter photograph in May 2006.  (Id.)

December 14, 2005, that he first possessed the seven-point elk head seized from the taxidermist.[4]  (Id. at 36-37, 57).

In the course of his testimony, Officer Murphy stated that it was this elk head that formed the basis of one of the state citations detailed next.  (Id. at 56-58).

## C.  Plea Negotiations in the State Case for Immunity from Federal Charges

As a result, the Montana Department of Fish, Wildlife and Parks issued citations against Mr. Belderrain for submitting false records in connection with Mr. Belderrain's outfitting business; acting as a guide without a license; and possession of unlawfully taken elk antlers (the seven-point elk head).  (v. 1, doc. 17, exhibits A, B, C).

Mr. R. Stan Peeler represented Mr. Belderrain on these charges.  In a letter of March 23, 2006 to the state prosecutor (v. 1, doc. 17, exhibit D), Mr. Peeler stated that Mr. Belderrain would plead *nolo contendere* to the three charges.  But, stressed Mr. Peeler, "[t]his agreement is contingent upon Mr. Belderrain obtaining an agreement with the *United States* that no charges will be brought based on information currently available to the *government*."

---

[4]     The location and date are reflected in exhibit C attached to the motion to dismiss.  (v. 1, doc. 17).

Agent Douglas Goessman, Special Agent for the United States Fish and Wildlife Service, Office of Law Enforcement (USFWS/OLE) in Bozeman, Montana, was informed that defense counsel sought a letter stating that "the *federal government* would not prosecute Mr. Belderrain for wildlife charges arising from our investigation." (v. 5 at 66). Accordingly, the agent contacted the Assistant United States Attorney who handles wildlife cases out of the District of Montana. (Id. at 66-67). After discussing the matter, on March 27, 2006, Agent Goessman faxed a letter concerning federal wildlife charges to Mr. Belderrain's attorney. (Id. at 70).

In this letter, Agent Goessman set forth the position of the USFWS/OLE in this matter, twice referencing the United States Attorney's Office for the District of Montana in connection with information "currently held" (v. 1, doc. 17, exhibit E at ¶ 3,4), and once stating that "new or future information" would be referred for "federal prosecution." (Id. at ¶ 5).[5]

---

[5]    Exhibit E, ¶ 3 states:

> [O]nce the state court accepts Mr. Belderrain's plea agreement in the charges arising from information currently held by the Montana Department of Fish, Wildlife and Parks, the USFWS/OLE will not refer this case to the U.S. Attorney for the District of Montana for prosecution.

The letter, at ¶ 4, further provides that if the plea were not accepted, the USFWS/OLE "may refer information gathered during the current investigation to

As a result of these negotiations, at the end of March 2006, Mr. Belderrain entered *nolo contendere* pleas to the three state citations.  (<u>Id</u>.).

D.  The Federal Charges

In March 2007, the United States filed a multi-count indictment against Mr. Belderrain.  (v. 1, doc. 1).  Count one charged him with being a felon in possession of a firearm (18 U.S.C. § 922(g)).[6]  Count 4 charged Mr. Belderrain with knowingly transporting wildlife, to wit, a bull elk, which he knew was in violation of the laws and regulations of the United States, citing 36 C.F.R. § 2.2(a)(3),[7] in violation of the Lacey Act, 16 U.S.C. §§ 3372(a)(1).  The regulation prohibits possessing unlawfully taken wildlife.  The statute makes it unlawful to, among other things, transport any wildlife taken or possessed in violation of any law or regulation of the United States.

---

the U.S. Attorney's [O]ffice for the District of Montana for prosecution."

Finally, ¶ 5 states that "the USFWS/OLE will investigate and refer for federal prosecution, any new or future information concerning Mr. Belderrain's violation of federal wildlife and/or federal criminal statutes."

[6]      Counts 2 and 3 were ultimately dismissed.

[7]      36 C.F.R. § 2.2(a)(3) prohibits "[p]ossessing unlawfully taken wildlife or portions thereof."  Section 3372(a)(1), 16 U.S.C., makes it unlawful "to import, export, transport, sell, receive, acquire, or purchase any fish, wildlife or plant taken, possessed, transported, or sold in violation of any law, treaty or regulation of the United States or in violation of any Indian tribal law."

6

Count 5 charged Mr. Belderrain with knowingly possessing wildlife, a bull elk, which he knew had been taken in violation of the laws of the State of Montana, in violation of the Lacey Act, 16 U.S.C. § 3372(a)(3)(A)).  (Id.).  This statute makes it unlawful to possess any wildlife taken, possessed or transported in violation of state law.[8]  The state statues are as follows: § 87-3-102(3)(a) (MCA), which proscribes detaching or removing the head or antlers from a carcass, and § 87-3-104 (MCA), which makes it unlawful to hunt any game animal during the closed season on any species of game animal.[9]

### E.  Motion to Dismiss Based on State Plea Agreement

Mr. Belderrain moved to dismiss all the counts, claiming that his plea agreement with the state barred the United States Attorney's Office for the District of Wyoming from prosecuting him.  (v. 1, doc. 17).  (*Attachment 2*).[10]

The district court held a hearing on June 22, 2007, on Mr. Belderrain's motion to dismiss.  (v. 5).  At the hearing, in addition to the testimony set forth in

---

[8]      Section 3372(a)(3)(A), 16 U.S.C., makes it unlawful "to possess any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law or Indian tribal law."

[9]      The citation to the state statutes is derived, not from the indictment, but from the government's subsequent motion to amend the indictment's citation to the state statutes.  (v. 1, doc. 35).

[10]      *Attachment 2* contains the motion and the exhibits that had been attached to the motion.

Section B, Officer Murphy testified that, on May 24, 2006, Mr. Senst, the taxidermist, told him that the seven-point elk head belonged to the carcass found just outside of Yellowstone in mid-December 2005. (Id. at 23, 58). The officer submitted core samples of bone from the antlers and femur bone for a DNA comparison, which comparison revealed a match. (Id. at 24).

Officer Murphy further testified that subsequently, Mr. Belderrain admitted that he was inside the national park when he shot the seven-point bull elk, which was standing just outside the park. (Id. at 25-27, 30, 33). Mr. Belderrain also told him that the elk that he had shot on November 24, 2005, near Buffalo Horn Drainage was a different elk. (Id. at 54).

Officer Murphy stated that he knew of no agreement that Mr. Belderrain would not be prosecuted for his actions in connection with the elk antlers dragged into the park. (Id. at 27-28, 30-31). Agent Goessman testified that, until Officer Murphy told him in late May/early June, that he did not know that Mr. Belderrain was involved with the elk found just outside of the national park. (Id. at 70-72).

Agent Bruce Applin, Special Agent with the National Park Service and assigned to Yellowstone, testified that he had had no input into Agent Goessman's letter, and would have been aware of any agreement by state or federal authorities in Montana concerning this park-related elk. (Id. at 82-83, 86-87, 89). He had no

8

information about the connection between Mr. Belderrain and that elk until May

2006.  (Id. at 81-82).  It was then that he spoke with Mr. Belderrain, who gave a

written statement that

> he shot a bull elk across from . . . Daley Creek and
> brought [the] head back through Yellowstone Park with
> Jake and Leif [Oquist].  [I] ... made up a story about
> killing this bull in Buffalo Horn.  [I] [h]ad Leif, Jake and
> Jenna all stick to our story about the elk, tried to say it
> was a winter kill.

(Id. at 85).[11]

## F.  District Court's Ruling

In a written order, the court denied the motion to dismiss.  (v. 1, doc. 28).

(*Attachment 3*).  The court found no ambiguity in the promise made by the USFWS

officials in Montana.  Those officials promised that if Mr. Belderrain pleaded

guilty to the charges arising from information "currently held" by the Montana

Department of Fish, Wildlife and Parks, the USFWS/OLE "[would] not refer th[e]

case to the U.S. Attorney for the District of Montana for prosecution."  (Id. at 3,

*quoting* exhibit E).

The court further found that, even if the Montana plea agreement bound the

Wyoming office, the agreement had not been breached.  (Id.).  This is because the

---

[11]    Apparently, another headless elk was found *in* the park about a mile
south of where the elk of this case was found.  (v. 5 at 63, 80).

agreement further stated that "[t]he USFWS/OLE will investigate and refer for federal prosecution, *any new or future information* concerning Mr. Belderrain's violation of federal wildlife and/or federal criminal statutes." (Id.) *(emphasis added)*. The district court found that the present charges were based on information obtained by law enforcement officials *after* Mr. Belderrain entered into the Montana plea agreement. (Id. at 4).

## G.  Federal Guilty Plea and Sentence

Thereafter, Mr. Belderrain agreed to plead guilty to the firearm and Lacey Act violations. (v. 2, doc. 34). In addition to other provisions, the agreement specified that Mr. Belderrain could appeal the district court's denial of his motion to dismiss. (Id. at ¶ 12).

During the plea colloquy, Mr. Belderrain admitted to possessing a firearm in the District of Wyoming, and to transporting and possessing the head of a bull elk in the District of Wyoming. (Id. at 27-28, 31-35). Mr. Belderrain entered his pleas of guilty. (Id. at 44).

In accordance with the federal sentencing guidelines, the district court sentenced Mr. Belderrain to 48 months on count one, felon in possession, and 12 months on unlawful transportation and unlawful possession of illegally taken wildlife (counts 4 and 5), to run concurrently with each other and with the 48-

month term.  (v. 1, doc. 50; v. 4 at 14-17).  The district court permitted Mr.

Belderrain to remain released pending appeal.  (Id. at 21).


## SUMMARY OF THE ARGUMENT

The district court denied Mr. Belderrain's motion to dismiss the indictment,

holding first, that the plea agreement's immunity did not reach beyond the United

States Attorney's Office for the District of Montana, and alternatively, that even if

it did, the agreement was not breached because the federal charges were based on

new information and not information held by authorities at the time Mr. Belderrain

entered his state pleas.

As to the court's first holding, in deciding whether a plea agreement, in

which one United States Attorney's Office enters, binds another such office from

prosecuting the defendant, this Court will consider 1) whether the charges are

based on the same or related conduct, and 2) whether the language of the

agreement is binding on the other office.  See United States v. Crobarger, 158 F.

App'x 100 (10th Cir. 2005).

Following this two-part analysis, the federal charges in this case are based

on the same or related conduct in the state case.  The federal charges of possession

of a firearm, and transportation and possession of wildlife, are all related to the

state citation for possession of the unlawfully taken elk antlers. The charges all involve the seven-point elk head seized from the taxidermist, which belonged to the carcass found just outside Yellowstone National Park. The district court was clearly wrong in holding otherwise.

As to the second part of the <u>Crobarger</u> analysis, the language of the plea agreement (specifically, Agent Goessman's letter), is ambiguous with respect to the reach of the immunity set forth therein. Paragraphs 3 and 4 of Agent Goessman's letter specify the United States Attorney's Office for the District of Montana as the office to which current information would or would not be referred, depending on whether the plea were accepted in state court. But in ¶ 5, Agent Goessman wrote that any new or future conduct would be referred "for federal prosecution." In the negotiations, Mr. Belderrain's attorney sought to bind the United States.

Thus, in context, the letter can be read to promise that current information would be referred (or not) to the Montana office, while new information could be referred to another office. Or, because the letter specifies the Montana office, the letter can be read to limit even new information for reference for federal prosecution only to that office.

12

Given this ambiguity, this letter should be interpreted with four principles in mind.  First, negotiations by one United States Attorney's Office are made on behalf of the "United States."  *See* United States v. Carter, 454 F.2d 426, 428 (4th Cir. 1972).  Second, in the absence of an express disavowal of binding another Office, the reach of the agreement's immunity is broad.  *See* United States v. Johnston, 199 F.3d 1015 (9th Cir. 1999).  Third, a promise to bind another district can be inferred from the negotiations.  *See* United States v. Russo, 801 F.2d 624, 626 (2nd Cir. 1986).  Finally, any ambiguity should be interpreted in favor of Mr. Belderrain.  *See* Crobarger, 158 F. App'x at 106 (noting the majority of circuits follow this approach in this context).

Under these principles, the United States Attorney's Office for the District of Wyoming should be bound not to prosecute Mr. Belderrain based on information known at the time of his state pleas.  This Court's approach in interpreting plea agreements in other contexts leads to the same conclusion.  *See* United States v. Peterson, 225 F.3d 1167 (10th Cir. 2000).

As to the district court's alternative holding, Mr. Belderrain urges that the information underlying the federal prosecution was *not* "new," but rather was information "currently held" at the time of the plea.

13

It is true that, at the time of the plea, state and federal officials did not have Mr. Belderrain's admission that the seven-point elk head involved in the state plea belonged to the elk carcass found just outside of Yellowstone and associated with drag marks in the park. But, the information these officials *did* have was such that they *should have known* of this connection.

There is no dispute that the seven-point elk head involved in the state case is the one involved in the federal charges. Moreover, prior to the state plea, state and federal officials knew that in mid-December 2005, an elk carcass, missing its head, was found outside of Yellowstone. Blood and drag marks and footprints indicated that an object had been dragged into the park. Prior to the state plea, Mr. Belderrain had admitted that he had shot an elk and possessed the antlers on December 15, 2005. This was the same date that Park officials had discovered the headless elk carcass outside of Yellowstone. Based on these known facts, it is urged that the officials had sufficient information to connect the state case to the national park. That is, they should have known that the elk head was the one determined to have been dragged into the park in mid-December 2005. As such, the federal charges cannot fairly be characterized as based on "new or future" information and outside the reach of the agreement.

14

Therefore, Mr. Belderrain's plea agreement bound the Office in the District of Wyoming.  As a result, the district court should have dismissed the indictment. Its failure to do so requires reversal.

**BECAUSE THE AGREEMENT ENTERED INTO BY THE UNITED STATES ATTORNEY'S OFFICE FOR THE DISTRICT OF MONTANA, IN CONNECTION WITH MR. BELDERRAIN'S STATE PLEAS, BOUND THE OFFICE FOR THE DISTRICT OF WYOMING, THE UNITED STATES BREACHED THE AGREEMENT**

### A.  Introduction

The district court held that the United States Attorney's Office for the District of Montana did not have authority to bind the Office in Wyoming, and even if it did, the agreement was limited to information then known to the officials and did not encompass information later discovered.  (v. 1, doc. 28).  The district court erred in both respects.

### B.  Standard of Review

The issue in this case is "the reach of the immunity element of a plea agreement."  United States v. Johnston, 199 F.3d 1015, 1020 (9th Cir. 1999).  The question of whether one United States Attorney's Office can bind another is a question of law.  As such, it should be reviewed *de novo*.

15

This Court reviews for clear error a district court's fact findings regarding "the existence and terms of [the] agreement." United States v. Borders, 992 F.2d 563, 566-67 (5th Cir. 1993). A finding is clearly erroneous if, after reviewing all the evidence, a court is left with "the definite and firm conviction that a mistake has been made." United States v. Martinez, 512 F.3d 1268, 1276 (10th Cir. 2008), *cert. denied*, ___ S.Ct. ___, 2008 WL 1781024 (2009).

<u>C. Reach of the Immunity Agreement:<br>Authority to Bind Another District</u>

As a preliminary matter, "[o]rdinarily, the federal government is not bound by provisions of a state plea agreement or the representations of a state prosecutor unless it was a party to the state proceedings." United States v. Sells, 477 F.3d 1226, 1234 (10th Cir. 2007) (*citing* United States v. Padilla, 589 F.2d 481, 484 (10th Cir. 1978)). Here, there is no dispute that the state plea agreement bound the United States Attorney's Office for the District of Montana. Agent Goessman's letter was written and sent after consultation with the United States Attorney's Office for the District of Montana. (v. 5 at 66-67).

The question here is whether the agreement bound the United States Attorney's Office for the District of Wyoming. In United States v. Crobarger, 158 F. App'x 100 (10th Cir. 2005), this Court recognized that the authority to bind another office "exists where the crimes at issue in the two districts were the same

16

or related and where the plea agreement prevented the second district from

proceeding with the prosecution of those crimes."  Id. at 105 (*citing* United States

v. Gebbie, 294 F.3d 540, 550 (3rd Cir. 2002) and United States v. Carter, 454 F.2d

426, 428 (4th Cir. 1972)).  In Gebbie, the Third Circuit held: "[W]hen a United

States Attorney negotiates and contracts on behalf of 'the United States' or 'the

government' in a plea agreement for specific crimes, that attorney speaks for and

binds all of his or her fellow United States Attorneys with respect to those same

crimes and those same defendants."

Under these cases then, two factors must be satisfied in order to bind another

district: 1) the crimes are the same or related, and 2) the plea agreement prevents

the second district from prosecuting for those crimes.

### *1.  Same or Related Crimes*

In denying this claim, the district court first held:  "Although similar, the

crimes charged in the present indictment are not the same crimes as those to which

the Defendant plead guilty pursuant to the agreement in Montana."  (v. 1, doc. 28

at 2).  But for one Office to bind another, the crimes need not be the same, but only

*related*.  These surely are.

17

In this case, the federal charges and the state charge of possession of unlawfully taken elk antlers are all based on Mr. Belderrain's possession of the same seven-point elk head.  Thus, the crimes are the same or related.

### 2.  Plea Agreement's Language Is Ambiguous

The district court found "no ambiguity in the promises made by the USFWS officials in Montana."  (v. 1, doc. 28 at 3).  Mr. Belderrain contends that the language of the plea agreement (specifically, Agent Goessman's letter) is ambiguous with respect to the reach of the immunity set forth therein.

In his letter, Agent Goessman twice specified the United States Attorney's Office for the District of Montana with respect to information known at the time of Mr. Belderrain's plea in state court.  (v.1, doc. 17, exhibit E, ¶ ¶ 3, 4).  But he wrote that any new or future conduct would be referred "for federal prosecution." (¶ 5).

Thus, the letter can be read to promise that current information would be referred (or not) to the Montana office, while new information could be referred to another office.  Or, because the letter specifies the Montana office, the letter can be read to limit even new information for reference for federal prosecution only to that office.  This letter should be interpreted with four principles in mind.

### a. Offices Act on Behalf of the United States

The first principle to consider is that negotiations by one United States Attorney's Office are made on behalf of the "United States." *See* <u>Carter</u>, 454 F.2d at 428. "[T]hough the Government negotiates its plea agreements through the agency of specific United States Attorneys – as necessarily it must – the agreements reached are those of the Government." <u>United States v. Harvey</u>, 791 F.2d 294, 302-03 (4th Cir. 1986)(*citing* <u>Carter</u>, 454 F.2d at 428).

Agent Goessman's letter specified the United States Attorney's Office for the District of Montana, but also used the broader term of "federal prosecution." In <u>Gebbie</u>, the agreement used the terms, "United States" and "the Government," and the court found that the agreement was binding on more than the participating United States Attorney's Office. *See* <u>Gebbie</u>, 294 F.3d at 550, 552. *See also* <u>Harvey</u>, 791 F.2d at 301-03 (the agreement referred to the "Eastern District of Virginia," as well as the "United States;" the court found the agreement ambiguous, construing it against the government).

### b. No Express Disavowal

Second, in the absence of an express disavowal of binding another Office, the reach of the agreement's immunity is broad. *See* <u>United States v. Johnston</u>, 199 F.3d 1015 (9th Cir. 1999).

In reaching its conclusion that the agreement before it was ambiguous, the Harvey court observed that the government attorney did not make "any specific representation that she was authorized to bind other districts . . . , neither did she specifically caution that she had no such authority or that though she had it she did not purport to exercise it." Harvey, 791 F.2d at 298-99.

In contrast, in Johnston, 199 F.3d at 1020, the Ninth Circuit held that the agreement's "language is entirely clear" and bound no other district but the contracting one.  The court found highly significant that the District of Michigan agreement provided that "[u]nless an exception to this paragraph is explicitly set forth elsewhere in this document, this agreement does not bind or obligate governmental entities other than the United States Attorney's Office for the Eastern District of Michigan."  Id. at 1021 (*emphasis in original*).

Mr. Belderrain's agreement contained no such express disavowal of an intent to bind the Office in the District of Wyoming.

### c.  Inference from Negotiations

Third, in the negotiations in this case, Mr. Belderrain's attorney, R. Stan Peeler, in his letter to the state prosecutor, sought an agreement that the *United States* would not charge Mr. Belderrain based on this conduct.  (v. 1, doc. 17, exhibit D).  Moreover, Agent Goessman testified at the hearing that he was aware

20

that Mr. Belderrain sought to bind the federal government.  (v. 5 at 66).  "A

promise to bind another district can be inferred from the negotiations between the

defendant and the prosecutor."  <u>United States v. Russo</u>, 801 F.2d 624, 626 (2nd Cir.

1986)(*citing* <u>United States v. Alessi</u>, 544 F.2d 1139, 1153-54 (2nd Cir. 1976)).

<i>d.  The Ambiguity Should Be Interpreted<br>In Mr. Belderrain's Favor</i>

In <u>Crobarger</u>, this Court found that a circuit split exists, involving "the

question of whether an agreement between an AUSA of one district and an

individual should be construed as binding on another district where the agreement

itself is ambiguous."  <u>Crobarger</u>, 158 F. App'x at 105-106.  This Court did not

decide that question, because it found that there was "no question of ambiguity in

the agreement."  <u>Id</u>.  In that case, the Assistant United States Attorney for the

District of Colorado, intended to bind, not just the Office in Colorado but the one

in Utah as well.  <u>Id</u>.[12]

---

[12]     In addition, this Court held that none of the cases in the circuit split involved the situation presented.  *See* <u>United States v. Crobarger</u>, 158 F. App'x 100, 107 (10th Cir. 2005).  That is, the Assistant's promise to file a motion to reduce sentence was far "more attenuated than in the case of a plea agreement."  <u>Id</u>. The <u>Crobarger</u> decision was expressly limited to "the specific facts" of the case. <u>Id</u>.

21

Here, this Court is called upon to resolve the circuit split because the agreement *is* ambiguous.  The Second Circuit interprets any ambiguity in the other district's favor.  *See* United States v. Annabi, 771 F.2d 670, 672 (2nd Cir. 1985) ("[a] plea agreement binds only the Office of the United States Attorney for the district in which the plea is entered unless it affirmatively appears that the agreement contemplates a broader restriction").

But as the Crobarger Court observed, the Third, Fourth and Ninth Circuits interpret any ambiguity "against the government and in favor of enforcing the agreement."  Crobarger, 158 F. App'x at 106 (*citing* Gebbie, 294 F.3d at 552; Johnston, 199 F.3d at 1021 (although language of an agreement should be construed against the government, where the language is clear in binding only a particular district, another district is not bound); Harvey, 791 F.2d at 303).

This Court should adopt the approach followed by the Third, Fourth, and Ninth Circuits.  Such approach is consistent, as explained next, with this Court's evaluation of plea agreements.

### 3.  *Breach of Plea Analysis Leads to the Same Conclusion*

The claim, that the Montana Office's promise bound the Wyoming Office, sounds in breach by the government, and is a question of law.  *See* United States v. Guzman, 318 F.3d 1191, 1194 (10th Cir. 2003); United States v. Peterson, 225 F.3d 1167, 1170 (10th Cir. 2000).

"[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."  Santobello v. New York, 404 U.S. 257, 262 (1971).

To determine whether the government has breached a plea agreement, the Court must examine the nature of the government's promise, and evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered.  Peterson, 225 F.3d at 1170-71.

As set forth at length above, the nature of the immunity promise in the agreement is capable of two interpretations.  As such, the language is ambiguous as to whether the United States Attorney's Office for the District of Wyoming was bound by the promise not to prosecute based on "currently held" information.  This ambiguity is interpreted against the government as the drafter of the agreement.  Id. at 1171.

Moreover, Mr. Belderrain's understanding of the scope of the promise was a reasonable one.  Id.  In his letter submitted to the district court, Mr. Belderrain's attorney wrote that the federal charges "are inconsistent with representations by the Federal Agent that Federal charges would not be brought regarding the subject elk or felon in possession issues."  (v. 1, doc. 17, exhibit I).

23

#### 4.  Conclusion as to the Binding Nature of the Agreement

Under these principles, the United States Attorney's Office for the District of Wyoming should be bound not to prosecute Mr. Belderrain based on information known at the time of his state pleas.  The district court was wrong in holding otherwise.

#### D.  All the Information Was There: The State and Federal Authorities Should Have Known

Alternatively, the district court found that "[t]he evidence presented to the Court establishes that the charges against the Defendant are based on information obtained by law enforcement officials *after* Defendant entered into the Montana plea agreement."  (v. 1, doc. 28 at 4) (*emphasis in original*).

Agent Goessman's letter distinguishes between information "currently held" by state officials and "new or future" information.  (v. 1, doc. 17, exhibit E).  Thus, "new information" must mean *other* than "information currently held" by the Montana Department of Fish, Wildlife and Parks.

#### 1.  No New Information

The information was not really new.  As of mid-December 2005, the Park officials were aware that the carcass of a headless bull elk lay just outside the park boundaries, and that foot, blood and drag marks indicated that an object had been

24

dragged away from the carcass into Yellowstone. (v. 5 at 78-80). In January 2006, Officer Murphy spoke about this with Bonnie Gafny, Park Ranger. (Id. at 59-60). Then in February, he seized the seven-point elk head from the taxidermist. Mr. Belderrain admitted to having shot the elk and possessed its head on December 14, 2005, around the same time that Park officials had located the carcass. The state citation bears this date. (v.1, doc. 17, exhibit C). It is undisputed that Mr. Belderrain's state court plea related to this seven-point elk head.

Although state and federal officials did not, at that time, have Mr. Belderrain's admission that he was the one who dragged the elk head into the national park, (rather than having shot the bull elk in the Buffalo Drainage), these officials should have known and made this connection based on the information known in March 2006. Put another way, while "additional," Mr. Belderrain's admission cannot fairly be characterized as "new or future" information. Instead, its substance should have been inferred from the information already known.

   2.  *Knew or Should Have Known*

The "knew or should have known" standard is a familiar one in the criminal law. It is used for sentencing enhancements. *See* United States v. Chee, 514 F.3d 1106, 1116 (10th Cir. 2008) (vulnerable victim); United States v. Willis, 476 F.3d

1121, 1128 (10th Cir.) (reasonable foreseeability of amount of loss), *cert. denied,* 127 S.Ct. 3025 (2007).  It is used to determine constructive possession, *see* United States v. Jones, 44 F.3d 860, 868 (10th Cir. 1995), and applies in deciding whether counsel's performance was deficient.  *See* United States v. Flowers, 464 F.3d 1127, 1132 (10th Cir. 2006).  The standard also applies in deciding whether the good-faith exception to the warrant requirement should apply, *see* United States v. Rowland, 145 F.3d 1194, 1216 (10th Cir. 1998), and whether police knew or should have known that Miranda warnings should have been given.  *See* United States v. Erekson, 70 F.3d 1153, 1156 (10th Cir. 1995).  *And see* Banks v. Reynolds, 54 F.3d 1508, 1517 (10th Cir. 1995)(whether defense counsel knew or should have known about the evidence is irrelevant to the government's duty to disclose exculpatory evidence).

### 3.  *Policy Reasons*

Sound policy reasons support holding the authorities to this "should have known" standard in the context presented by Mr. Belderrain's case.  As the Supreme Court stated in Santobello, "[t]he disposition of criminal charges by agreement between the prosecutor and the accused . . . is an essential component of the administration of justice."  Santobello, 404 U.S. at 260.  In this context,

government promises "must be fulfilled." Id. at 262.  To hold otherwise leaves a

defendant subject to the varying abilities of officials to draw inferences from the

facts, and vulnerable to communication breakdowns between such officials.  Such

officials "have the burden of 'letting the left hand know what the right hand is

doing' or has done." Id.

### 4.  Conclusion as to Current or New Information

Therefore, the district court clearly erred in finding that the federal charges

were based on new information, and not on information known to state and federal

authorities at the time of Mr. Belderrain's plea in state court.


## CONCLUSION

This Court should reverse and remand, so that Mr. Belderrain may withdraw

his plea, and for the district court to dismiss the federal indictment.

**STATEMENT OF COUNSEL AS TO ORAL ARGUMENT**

This case presents a novel issue, once that touches on a split in the circuits.

Such a case merits oral argument to assist the Court.

Respectfully submitted,

RAYMOND P. MOORE
Federal Public Defender

s/ VICKI MANDELL-KING
Assistant Federal Public Defender (Digital)
Chief, Appellate Division
VICKI MANDELL-KING
633 - 17th Street, Suite 1000
Denver, Colorado 80202
(303) 294-7002
Email Address: COX_10ECF@fd.org
Vicki_Mandell-King@fd.org

28

## Certificate of Compliance

**Section 1.  Word count**

As required by Fed. R. App. P. 32(a)(7)(C), I certify that this brief is proportionally spaced and contains   5743   words.

Complete one of the following:

☒   I relied on my word processor to obtain the count and it is Corel WordPerfect 13:

☐ I counted five characters per word, counting all characters including citations and numerals.

I certify that the information on this form is true and correct to the best of my knowledge and belief formed after a reasonable inquiry.


s/   Vicki Mandell-King
Assistant Federal Public Defender (Digital)

29

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing

## APPELLANT'S OPENING BRIEF

(1) all required privacy redactions have been made and, with the exception of those redactions, every document submitted in Digital Form or scanned PDF format is an exact copy of the written document filed with the Clerk, and;

(2) the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program Symantec Endeavors Corporate Edition version 10.1.4.4000, Virus Definition File Dated: 6/12/2008 rev. 3, and, according to the program, are free of viruses.

s/ Vicki Mandell-King
VICKI MANDELL-KING
Assistant Federal Public Defender
Chief, Appellate Division

30

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing

## APPELLANT'S OPENING BRIEF

was furnished to the following on the 13th day of June, 2008:

    David A. Kubichek (via e-mail)
    Assistant United States Attorney
    david.kubichek@usdoj.gov


    Michael David Belderrain (via US mail)
    4831 Copper Oaks Drive
    Herriman, Utah      84096


                     s/ Bernice Roybal
                     Bernice Roybal, Legal Secretary